935 A.2d 1275

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Jose HERNANDEZ, Appellee.**

Supreme Court of Pennsylvania.

Argued April 16, 2007.

Decided Nov. 21, 2007.

322

Diane E. Gibbons, Esq., Stephen B. Harris, Nathaniel Frederick Spang, Esq., Bucks County District Attorney's Office, for Commonwealth of Pennsylvania.

Cohen Stanley, *pro hac vice*, for Pennsylvania Police Criminal Law Bulletin.

Ann P. Russavage–Faust, Esq., Lisa Yvette Williams, Esq., Christa L. Schott, Esq., Stephen H. Shantz, Esq., Bucks County Public Defender's Office, Doylestown, for Jose Hernandez.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Justice FITZGERALD.

This case involves the limited search of a motor vehicle without a warrant, which supported, in part, the issuance of a search warrant for the entire vehicle. We must determine whether the initial search was lawful and, if not, whether the probable cause affidavit that included information obtained in that search nonetheless was sufficient to validate the warrant that ultimately issued. The Commonwealth, as Appellant, challenges the Order of the Superior Court, which deemed the search unlawful, reversed the trial court's denial of suppression, and vacated sentence. We now reverse the Superior Court's Order and reinstate the judgment of sentence.

On October 21, 2004, Joseph Purcell, the Operations Manager of Yellow Freight shipping company in Bensalem Township, contacted local police. Purcell reported that a Hispanic male had arrived at the office to pick up a shipment of 20 boxes, for which a fee of over $2,000 was due on delivery. Purcell said the man, whom he described as "nervous," was unaware that he would have to pay for the shipment. According to Purcell, the man left the premises and promised to return with the cash. Purcell became suspicious and inspected the shipment. In one of the boxes, he observed packets of marijuana wrapped in plastic.

With the cooperation of other law enforcement personnel, Bensalem Police instructed Purcell to allow the man to pick up the shipment, which he did less than thirty minutes later. The man paid the shipping fee in cash and the boxes were loaded into the U–Haul truck he was driving. Meanwhile, police staked out the area around Yellow Freight and waited for the U–Haul truck to exit the terminal. When it did so, police stopped the truck and ordered the man from it. The man was identified as Appellee Jose Hernandez. In his possession were directions from the Philadelphia International Airport to the Yellow Freight terminal, as well as directions from Yellow Freight to an address in Reading, Pennsylvania. Police learned that Hernandez had flown from Los Angeles to

Philadelphia earlier that morning and paid cash for a hotel room in Bensalem with two other Hispanic males. Several hours later, Hernandez rented the U–Haul truck, also with cash, and then made his way to Yellow Freight.

Bensalem Police Officer Cary Palmer was involved in the investigation and had been approaching the Yellow Freight terminal in his vehicle when he observed the U–Haul truck. By the time Officer Palmer arrived on the scene, other officers had stopped Hernandez and he was standing outside the truck speaking to the officers. Officer Palmer approached the truck and observed that the rollup rear door was closed with a latch, but unlocked. Drawing his weapon, he opened the rollup door, entered the rear of the truck, and circled the pallet of boxes contained inside. Officer Palmer did not touch any of the boxes, but he did observe an open box and saw that it contained "a brown package, maybe 12 to 18 inches in length ... that, from [his] training and experience [he] recognized ... [as] consistent with ... some kind of narcotics."

According to Officer Palmer, he entered the rear of the truck "to see[,] for officers' safety reasons[,] if there was someone else in the truck." Following Palmer's observation, the officers had the U–Haul truck towed to headquarters, where they continued their investigation. A canine sniff of the vehicle resulted in a positive indication for controlled substances in the rear. Further, Hernandez spoke with officers and explained that he had been paid $1,000 to travel from Los Angeles to Philadelphia to pick up the shipment. He admitted that the shipment contained controlled substances, but he refused to name the person for whom he was working because he feared for his family's safety.

Law enforcement personnel prepared an affidavit of probable cause seeking a search warrant for the U–Haul truck and included all of the facts set out above. The affidavit, in relevant part, provided the following:

Whereas, on 10/21/04 at approximately 1043 HRS Joseph Purcell, the Operations Manager of Yellow Freight 2627 State Road, Bensalem, PA 19020, contacted the Bensalem

Township Police Department regarding suspicious packages being picked up. Joseph Purcell stated that a[H]ispanic male had arrived to pick up a pallet of approximately 20 boxes and had been acting suspicious and nervous, and that the [H]ispanic male had paid $2,283.83 in U.S. currency. The package was shipped COD, which was suspicious to Mr. Purcell. The [H]ispanic male was unaware that he had to pay the $2,283.83 and went outside returning with the $2,283.83 approx. 1/2 hour later. Mr. Purcell had opened one of the approximately 20 boxes and observed a package in the box that he believed to be marijuana wrapped in plastic wrap. Mr. Purcell was confident that the item in the opened box was some type of controlled substance.

Members of the Bensalem Township Police Department established a perimeter and waited until the [H]ispanic male took possession of the approximately 20 boxes, having them loaded into the back of a rented U–Haul box truck. The police officers converged on the [H]ispanic male, the lone occupant of the U–Haul truck. The [H]ispanic male was identified as Jose M. Hernandez Jr. DOB: 12/28/71. Hernandez had in his possession printed out directions from Yahoo Maps, specifically directions from the Philadelphia International Airport to Yellow Freight, and a second set of directions from Yellow Freight to 831 Walnut Street in Reading, PA. Hernandez also possessed a cellular telephone.

During the investigation your Affiants learned that Jose Hernandez had flown in to Philadelphia Airport from Los Angeles California at 9:50 PM on 10/21/04 [sic] (Pacific Standard Time), arriving in the early AM hours on 10/21/04. Hernandez then rented room # 107 at the Sleep Inn 3427 Street Road, Bensalem, PA 19020, paying cash. Hernandez was accompanied by two unidentified [H]ispanic males when he checked into the room. At 9:42 AM Hernandez rented a U–Haul truck paying $284.52 in cash. Hernandez arrived at the Yellow Freight 2627 State Road, Bensalem, PA 19020. The package [sic] with the approximately 20 boxes was loaded into the U–Haul truck.

Whereas, your Affiants are familiar with the fact through their training and experience that people involved in the illicit possession and distribution of controlled substances pay for everything in cash, as drug dealing is a cash business generating vast amount[s] of U.S. currency.

Whereas, the U–Haul truck had an Arizona registration plate: AB02180, bearing VIN: 1FDKF37G2VEB24093. Police Officer Palmer, Smith and Det. Gross observed in the back of the U–Haul rental truck a pallet containing approximately 20 cardboard boxes, one of which had been opened. The Officers were checking to ensure that there were no persons hiding in the back of the U–Haul that could pose a threat to the Officers' safety as well as their own. Det. Gross has made hundreds of narcotics related arrests, has recovered controlled substances hundreds of times, and has attended hundreds of hours of specialized narcotics training. Det. Gross observed a package inside of the opened box that he described as rectangular with rounded edges, 1 1/2–2 feet long and several inches thick, wrapped in plastic wrap and tape. Det. Gross through his training and experience recognized the packaging as being consistent with packaging that has been recovered in the past containing controlled substances. It is Det. Gross' opinion that the package contained controlled substances.

Whereas, Hernandez was interviewed at police headquarters by Sgt. Barry and D.E.A. Agent Bleier. Hernandez stated that this was the first time he had done this, and that he was paid $1,000.00 to fly out to Philadelphia from Los Angeles, California to pick-up the shipment at Yellow Freight. Hernandez was supposed to call someone who [sic] he refused to identify and transfer the U–Haul and shipment it contains somewhere on the way to Reading. Hernandez was to get detailed instructions when he placed the call. Hernandez refused to give names and certain specifics stating that he had 5 children and family and that he feared for their lives if he gave specifics. Hernandez stated that someone else had paid for his plane ticket. Hernandez stated that he knew the boxes contained con-

trolled substances, either marijuana or cocaine, believing it was probably cocaine.

Whereas, Officer David Weiser, K–9 certified Police Officer with Bristol Township Police Department, utilizing his narcotics detector certified K–9 Rommel, conducted a search of the exterior of the vehicle for the presence of the odor of controlled substances. K–9 Rommel gave a positive indication for the presence of the odor of controlled substances at the rear/tail roll-up door of the U–Haul.

Whereas, Hernandez stated that he had one prior arrest for possession of cocaine in California.

Whereas, the U–Haul truck has been seized and has been in police custody since the time that it was stopped after having exited the parking lot of Yellow [F]reight. A Police Officer has maintained constant visual surveillance of the U–Haul.

Whereas, based on the information contained within this Affidavit of Probable Cause, your Affiants have established probable cause exists to believe that the U–Haul contains approx. 20 boxes that contain controlled substances, and request the issuance of the accompanying search warrant to secure evidence of violations of ACT 64.

*Commonwealth v. Hernandez,* 892 A.2d 11, 19–21 (Pa.Super.2006) (quoting from Affidavit of Probable Cause, October 21, 2004).

The district justice approved the warrant later that afternoon and the ensuing search of the U–Haul truck yielded over four hundred pounds of marijuana.

Hernandez was charged with one count of possession with intent to deliver marijuana. Prior to trial, he moved to suppress admission of the drugs based on his assertion that the officers' entry into the rear of the U–Haul truck was unlawful. The trial court denied the motion, reasoning that the limited search of the truck was proper in light of the potential danger to police. Following a guilty verdict and the imposition of a five-to-ten year prison term, Hernandez filed an appeal with the Superior Court. That Court vacated the

judgment of sentence, relying on its conclusion that the initial search was not authorized by law and, further, that the warrant was insufficient in setting out probable cause. The Commonwealth sought allowance of appeal in this Court, which we granted.

Our review focuses on whether the trial court properly denied suppression and our standard is well settled. "[W]e must determine whether the record supports the court's factual findings.... [If so,] we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Stevenson,* 560 Pa. 345, 744 A.2d 1261, 1263 (2000). The facts surrounding suppression are not in issue. Rather, the parties' positions diverge on the legal conclusions, specifically, whether police were authorized to conduct a warrantless search of the U–Haul truck based on the potential danger it allegedly posed to police and whether the affidavit in support of the warrant set forth sufficient probable cause.

Under the federal Constitution, law enforcement personnel may conduct a warrantless search of an automobile as long as probable cause exists. *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 147–56, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This rule, known as the automobile exception to the warrant requirement, is based on the inherent nature of vehicles—their mobility—and applies even if a vehicle is "seized and immobilized." *Commonwealth v. McCree,* 592 Pa. 238, 924 A.2d 621, 629 (2007) (plurality) (citing *Chambers* ). In Pennsylvania, however, "we have not adopted the full federal automobile exception under Article I, Section 8." *Id.* Warrantless vehicle searches in this Commonwealth must be accompanied not only by probable cause, but also by exigent circumstances beyond mere mobility; "one without the other is insufficient." *Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87, 93 (1999). This dual requirement of probable cause plus exigency is an established part of our state constitutional jurisprudence. *McCree,* 924 A.2d at 629–30. *See also Com-*

*monwealth v. Casanova,* 748 A.2d 207, 211 (Pa.Super.2000), *appeal denied,* 570 Pa. 682, 808 A.2d 569 (2002); *Commonwealth v. Gelineau,* 696 A.2d 188, 192 n. 2 (Pa.Super.1997), *appeal denied,* 705 A.2d 1305 (1998); *Commonwealth v. Rosenfelt,* 443 Pa.Super. 616, 662 A.2d 1131, 1146 (1995), *appeal denied,* 544 Pa. 605, 674 A.2d 1070 (1996).

Precisely what satisfies the exigency requirement for warrantless vehicle searches has been the subject of many of this Court's opinions, some of which include multiple, varying expressions with no clear majority.[1] For instance, in *Commonwealth v. Perry,* 568 Pa. 499, 798 A.2d 697 (2002) (opinion announcing the judgment of the Court), this Court considered the propriety of a warrantless vehicle search immediately following a shooting. The automobile at issue was in the middle of a city street at 3:00 am with its engine running and its occupants in police custody. Police had probable cause to believe that loaded firearms were inside the car or, if not, that the guns perhaps had been abandoned in the neighborhood surrounding the vehicle. In light of these safety concerns, police lifted the floor mats, and discovered a loaded, 9mm handgun and a .22 Beretta. The issue at trial was the validity of that search in the absence of a warrant.

Then Justice, now Chief Justice, Cappy wrote the lead opinion announcing the judgment of the Court in *Perry.* Justice Cappy concluded that the danger posed to police constituted exigent circumstances sufficient to permit the limited, warrantless search. *Id.* at 703. Justice Castille wrote a concurring opinion that Madame Justice Newman joined. Justice Castille agreed that if exigency were required for warrantless vehicle searches, then danger to police surely would satisfy that requirement. However, Justice Castille was of the opinion that our state "jurisprudence should [not] require any exigency beyond the mobility of a vehicle and the

---

1. While the discussion regarding the requirements for warrantless vehicle searches in *McCree* was not necessarily crucial to the resolution of the matter, the various expressions in that case illustrate the differing, current viewpoints held by members of this Court.

unexpected development of probable cause." *Id.* at 706 (Castille, J. concurring).

Justice Saylor also filed a concurring opinion. He noted that the issue was less than settled, but stated nonetheless that "both probable cause and exigent circumstances [were required] to justify a warrantless [vehicle] search." *Id.* at 719. Proceeding on the belief that exigency required more than merely late or recent acquisition of probable cause, Justice Saylor agreed that the dangerous circumstances presented in *Perry* justified the warrantless search. *Id.* at 720.

In a dissenting opinion, Justice Nigro, joined by Justice Zappala, stated that validation of the search based on danger to police "unjustifiably expand[ed] the scope of exigent circumstances." *Id.* at 724 n. 5 (Nigro, J., dissenting). Justice Flaherty did not participate in the decision.

In this case, the suppression court found that police had ample basis to stop Hernandez's vehicle.[2] Relying on Justice Cappy's opinion in *Perry,* the suppression court went on to conclude that police were authorized to conduct a limited search of the rear of the truck based on exigent circumstances, namely, "to assure officer safety." Trial Court Opinion, 6/24/05, at 7. The Superior Court disagreed. That Court first questioned whether danger to police was a valid justification for the warrantless search of a vehicle. *Hernandez,* 892 A.2d at 16. Next, the panel reasoned that even assuming the validity of a "police danger exception," the facts of the case did not support its application. *Id.*

Although we agree with the Superior Court that the initial, warrantless search of the U–Haul truck in this case was not justified on the basis of danger to police, we explicitly hold that potential danger to police or the public indeed satisfies the exigency requirement for warrantless vehicle searches in this Commonwealth. We proceed first to clarify that principle and go on to explain why it is inapplicable here.

---

**2.** Hernandez does not claim that the initial stop of his vehicle was unlawful.

The notion that the possibility of danger can rise to the level of exigent circumstances in the context of a vehicle search initially was suggested in *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995). In that case, this Court considered whether police lawfully searched the defendant's vehicle during the investigation of a drug transaction. Police had advance knowledge of the drug activity and had secured warrants for some of the participants' homes and one of their cars. However, police had not sought a warrant for White's car. After careful consideration of all the facts, this Court held that the search of White's vehicle could not be justified on any basis, including exigent circumstances under the automobile exception, a search incident to arrest, or an inventory search. In holding that a warrantless vehicle search is not proper simply because the driver or an occupant has been removed from the vehicle and placed in custody, the *White* Court cautioned that exigent circumstances had the potential to change matters:

> We do not propose to invalidate warrantless searches of vehicles where the police must search in order to avoid danger to themselves or others, as might occur in the case where police had reason to believe that explosives were present in the vehicle. Emergencies such as this, however, are not part of this case.

*Id.* at 902 n. 5.

This qualifying language in *White* was the foundation of Justice Cappy's opinion in *Perry* and, apparently, the genesis of what later became known as the controversial "police danger exception" to the warrant requirement. But neither the footnote in *White* nor the lead opinion in *Perry* purported to create a separate and new "exception" to the warrant requirement for vehicles. Rather, both expressions simply recognized that potential danger to police or the public constituted exigent circumstances, which were required, along with probable cause, for warrantless vehicle searches. Although exigency based on danger is hardly a new concept, "danger to police" as a separate "exception" nonetheless appears to have taken on a life of its own, culminating in the

Superior Court's extensive analysis in this case of whether it even exists as the basis for justifying a warrantless search. *Hernandez,* 892 A.2d at 11 ("[T]he Justices [in *Perry* ] could not reach a majority on whether Pennsylvania should recognize a broad 'police danger' exception to the warrant requirement."). We hold today, without equivocation, that where there is potential danger to police or others in the context of a vehicle stop, exigency has been established for purposes of a warrantless search.

■ The fact that potential for danger to police or the public is enough to constitute exigent circumstances does not mean that a mere assertion of danger is sufficient. Rather, police must be able to articulate the danger posed under the specific circumstances of the case.

■ Applying this standard to the facts in this case, we conclude that the claim of exigent circumstances based on potential danger was not sufficiently supported on the record. The transcript from the suppression hearing reveals that the Commonwealth did not offer any evidence in support of its assertion that there was potential for harm. Officer Palmer explained his decision to search the truck with a single sentence: "I wanted to open the gate to see for officers' safety reasons if there was someone else in the truck." N.T., 3/8/05, at 9. He did not attempt to explain why he was concerned for his safety.

Not only did the Commonwealth fail to proffer any evidence to show that police reasonably believed that someone else was present in the truck and posed a danger to them, but the testimony and documentary evidence of record showed otherwise. Specifically, Officer Palmer testified to knowing that Yellow Freight personnel reported *a Hispanic male* would be driving a U–Haul truck loaded with marijuana. *Id.* at 7. Further, the affidavit in support of the warrant refers to *a [H]ispanic male* [who] had arrived to pick up a pallet of approximately 20 boxes, and later notes that police waited until *the [H]ispanic male* took possession of the approximately 20 boxes, *having them loaded into the back of a rented U–*

*Haul box truck.* Affidavit of Probable Cause, October 21, 2004 (emphasis supplied). A fair reading of the affidavit indicates that the Yellow Freight employees had contact with a single Hispanic male only, including at the time the boxes were loaded into the mans truck.

There is no testimony of record that Officer Palmer suspected that another person was assisting Hernandez, nor was there testimony about a period of time that the truck was outside of police surveillance when another person could have joined him. Considering the suppression hearing record in its entirety, we are compelled to conclude that there was no evidence to support police claims of danger from a second person. Further, the testimony that was offered tended to show that just a single person occupied the truck. The Commonwealth suggests that that the police acted properly because, as the suppression court concluded, there is a high level of violence associated with the drug trade and those involved in the drug trade are known to frequently be armed. Appellants Brief at 14. Such a claim may supply a rationale for why police would be concerned that Hernandez posed a danger, but it fails to demonstrate the logic of believing a second person was present in the truck. This is particularly true in light of the information police received from Yellow Freight personnel describing a single male suspect. We reject the Commonwealth's claim that the inherently dangerous nature of the drug trade translated supplies the evidence necessary to establish potential danger in this case. Indeed, Officer Palmer was not asked and did not offer the basis for his beliefs.

We likewise reject the Commonwealth's argument that our holding means that police can only protect themselves if they are virtually certain that life or limb is in imminent danger. *Id.* at 17. The fatal flaw in this case is not that the Commonwealth failed to establish with certainty that someone else might have been hiding in the truck. Instead, it is that the Commonwealth did not offer *any* support for such a claim, and the evidence it did offer belies it.[3] The initial, limited search

3. At the suppression hearing, the trial judge conceded that "nothing in the information that was received from Mr. Purcell ... tended to

of the U–Haul truck was not supported by exigent circumstances, and thus it was unlawful in this Commonwealth. As a result, the observations of police during that search cannot form the basis for establishing probable cause in support of the search warrant.

 Our conclusion that there were no exigent circumstances here does not end the inquiry. The law is clear that where some evidence contained in a search warrant affidavit is unlawfully obtained, we must consider whether the affidavit nonetheless sets forth probable cause in the absence of such evidence. *Commonwealth v. Shaw*, 476 Pa. 543, 383 A.2d 496, 501 (1978). In other words, we must decide whether, absent the information obtained through illegal activity, probable cause existed to issue the warrant. *Id.* at 502. Only evidence that was available to police because of the unconstitutional search, *i.e.*, the product of the illegal police activity, is disregarded. *Id.* (citing, *inter alia*, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

The suppression court concluded that even if the initial search of the truck was unlawful and the officers' observations were subject to suppression, the affidavit in support of the warrant set forth independent probable cause. The Superior Court acknowledged the rule in *Shaw*, but concluded with virtually no discussion that, absent the illegally obtained information, the warrant was issued upon an insufficient basis. *Hernandez*, 892 A.2d at 21. Essentially, the Superior Court held that the only remaining evidence offered in support of probable cause was Purcell's report to police that he had observed Hernandez's shipment and that it contained marijuana wrapped in plastic wrap. The Superior Court reasoned:

> [T]he affidavit is silent as to Mr. Purcell's familiarity or lack of familiarity with drugs or drugs packaging. Moreover,

establish that . . . [Hernandez] had someone accompanying him." N.T. 3/8/05, at 39. Nonetheless, the court concluded that "none of [Purcell's] information . . . exclude[d] that possibility," thus, the search was justified. We cannot agree. The Commonwealth has the burden of affirmatively establishing exigent circumstances; it is not enough that the possibility of exigent circumstances was not disproved.

there is nothing contained in the affidavit to support Purcell's subjective belief that the boxes contained contraband. *Id.*

Our review of the record and applicable law leads us to conclude that the Superior Court decision is incorrect for several reasons. We begin with the definition of probable cause: "The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Rogers,* 578 Pa. 127, 849 A.2d 1185, 1192 (2004). We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis. *Luv,* 735 A.2d at 90 (citing *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985)).

The Superior Court's blanket rejection of Purcell's report to police is unwarranted. First, it is reasonable to assume that an identified citizen who reports an observation of criminal activity to police is trustworthy, particularly in the absence of any special circumstances that would call his report into question. *Commonwealth v. Sudler,* 496 Pa. 295, 436 A.2d 1376, 1380–81 (1981). Purcell, as an identified citizen who managed a shipping facility and had authority and control over the packages that his company transported, was an inherently reliable source of information. Further, Purcell was not identifying a substance in order to prove its content at trial beyond a reasonable doubt; so he need not have offered expert testimony that what he saw was marijuana. Purcell reported that he observed marijuana in plastic wrap. His opportunity to see it, his identification to police, and the timely manner in which he made his observation, all combined to make his report reliable. Finally, Purcell's observation of marijuana packets cannot be viewed in isolation. Contrary to the Superior Court's analysis, the warrant reveals considerably more information than Purcell's mere "unsupported" report of contraband. The affidavit recited that Hernandez arrived to pick up a large shipment for which a sizeable cash-on-delivery charge was due. He was unaware of the fee, appeared nervous, and left the terminal, only to return thirty minutes

later with the cash. Police learned that he had arrived in Philadelphia from Los Angeles earlier that morning, and had promptly rented a hotel room and the U–Haul truck by paying cash. When stopped by police, Hernandez was in possession of maps with directions from the airport to the Yellow Freight terminal and a Reading address.

All of this information, Purcell's observations and the results of the preliminary investigation by police, when viewed under a totality analysis, would warrant a person of reasonable caution to believe that Hernandez was carrying contraband. But the affidavit includes even more. Police subjected Hernandez's truck to an exterior canine sniff, which resulted in a positive indication for controlled substances in the rear. Certainly, the authority to conduct the canine sniff was not the product of the unlawful, initial search of the U–Haul truck, as canine sniffs of vehicle exteriors need only be supported by reasonable suspicion. See Rogers, 849 A.2d at 1190–91 (exterior vehicle canine sniff need only be supported by reasonable suspicion, whereas canine sniff of person requires probable cause). Hernandez wisely does not assert that police lacked reasonable suspicion in this case. Further, the law is clear that once a canine sniff of a vehicle's exterior triggers a positive indication, reasonable suspicion of contraband in the vehicle ripens into probable cause. Id. at 1192. The inclusion of the positive canine sniff in the affidavit alone provides probable cause for the warrant that ultimately issued in this case.

The Superior Court did not discuss the additional information contained in the affidavit; it failed to consider whether and to what extent the information "would ... have been available to police if it were not for the unconstitutional search" and it failed to apply the totality of evidence standard.[4] Shaw, 383 A.2d at 502. This was error. Pursuant to

4. The Commonwealth argues that Hernandez's statements to police, admitting that he was carrying contraband, likewise should be included in the evidence constituting probable cause. While the suppression transcript sheds little light on this issue, and the Superior Court reached no specific conclusion in this regard, we will assume, for argument's sake, that Hernandez's confession to police was the "prod-

*Shaw* and the case law discussed above, the affidavit in this case set forth sufficient probable cause independent of the initial, unlawful search. As a result, the warrant was valid and the evidence seized under its authority properly was admitted against Hernandez at trial.

The order of the Superior Court is reversed.

Chief Justice CAPPY, Justice BAER and Justice BALDWIN join the opinion.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion in which Justice EAKIN joins.

Justice CASTILLE.

I concur in the result only, as I believe the warrantless search of the vehicle in this case was justified under the automobile exception to the warrant requirement. The Majority begins its analysis of the automobile exception under the Pennsylvania Constitution by declaring that "[t]his dual requirement of probable cause plus exigency is an established part of our state constitutional jurisprudence." Majority Op. at 328, 935 A.2d at 1280. In support, the Majority cites the recent three-Justice Opinion Announcing the Judgment of the Court ("OAJC") in *Commonwealth v. McCree*, 592 Pa. 238, 924 A.2d 621, 629–30 (2007),[1] and three Superior Court decisions. Four Justices in *McCree*, however, acknowledged that it is difficult to view anything in this Court's Article I, Section 8 automobile exception jurisprudence as established. Mr. Chief Justice Cappy, joined by Mr. Justice Baer and Madame Justice Baldwin, filed a Concurring Opinion, noting that, "the automobile exception in Pennsylvania is the subject of continued controversy in our Commonwealth and in its discussion of

uct" of the initial, unlawful search. But our assumption does not change the result in this case, as our analysis demonstrates that probable cause was made out even in the absence of Hernandez's admissions.

1. The *McCree* OAJC was a majority opinion in some respects, but a plurality with respect to the automobile search issue.

the 'limited automobile exception' under Pennsylvania law, the lead opinion fails to acknowledge or critically discuss the differing viewpoints concerning the existence or parameters of such an exception to the warrant requirement." *See McCree,* 924 A.2d at 633 (Cappy, C.J., concurring). In support of this point, the Chief Justice cited the various positions set forth in *Commonwealth v. Perry,* 568 Pa. 499, 798 A.2d 697 (2002) (Single–Justice OAJC by Cappy, J.; Concurring Opinion by Castille, J., joined by Newman, J.; Concurring Opinion by Saylor, J.; Dissenting Opinion by Nigro, J., joined by Zappala, C.J.).[2] Ultimately, the Chief Justice deemed it unnecessary to consider the contours of the automobile exception to resolve the appeal in *McCree* because, in his view, another exception to the warrant requirement applied. *McCree,* 924 A.2d at 634.

In a separate concurrence in *McCree,* I noted my agreement with the Chief Justice's assessment that "the status of the automobile exception under Article I, Section 8 is uncertain." *McCree,* 924 A.2d at 634 (Castille, J., concurring). I then noted that my Concurring Opinion in *Perry* had:

> engaged in an extensive analysis of this Court's precedent concerning the automobile exception, distinguishing what was clear and binding authority and what was not binding or persuasive, and I set forth my own views on the proper approach under Article I, Section 8. There is no need to repeat that analysis here. It is enough to state, for present purposes, that: (1) if this Court were to squarely face the question of what is demanded by Article I, Section 8 respecting automobile searches, I remain inclined to hold that our approach should be coextensive with the federal approach under the Fourth Amendment; and (2) failing that square joinder of the issue, it is my view that this Court's existing Article I, Section 8 **holdings** in this area (which do not include a state constitutional analysis under *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991)), at most suggest that, if Article I, Section 8 requires an exigency to justify a probable cause-based warrantless entry of a vehicle (probable cause is the only federal requirement), all

---

**2.** The OAJC in *McCree* never cited or discussed the *Perry* case.

that is required is that the probable cause "arose unexpect-
edly, *i.e.,* in circumstances that prevented police from secur-
ing a warrant before probable cause to search the vehicle
arose." *Perry,* 798 A.2d at 717 (Castille, J., concurring).[2]

---

2. In his separate concurrence in *Perry,* Justice Saylor articulated
his view of the exigency requirement emerging from the cases in
slightly broader terms: "this Court has indicated, in the automobile
paradigm, that sufficient exigency is present where, because of the
attending circumstances, it was not reasonably practicable for the
police to obtain a warrant." 798 A.2d at 720 (Saylor, J., concurring).

*McCree,* 924 A.2d at 635 (Castille, J., concurring).

As I noted in *Perry,* although there have been state consti-
tutional **holdings** rendered under Article I, Section 8 which
advert to some exigency beyond the federal requirement,
there has yet to be a candid and responsible *Edmunds*-style
state constitutional analysis or explanation for that departure
from perfectly reasonable federal authority. The reason for
this lacuna is that the Court, in cases such as *Commonwealth
v. White,* 543 Pa. 45, 669 A.2d 896 (1995), proceeded from a
misapprehension of the contours of the federal authority; *i.e.,*
the Court wrongly believed that the U.S. Supreme Court
required an exigency beyond the mobility of the vehicle.
Thus, this Court's approach to automobile search cases em-
ployed a single, coterminous Fourth Amendment/Article I,
Section 8 test, premised upon misapprehending federal law.
This circumstance—our misapprehension of the federal rule—
led the U.S. Supreme Court to summarily correct the two
companion decisions to *White. See Pennsylvania v. Labron,*
518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996); *see
generally Perry,* 798 A.2d at 709–14 (Castille, J., concurring)
(detailing history).

This area of the law has not represented this Court's finest
jurisprudential hour. Unless and until this Court tackles the
state constitutional question head-on via a thorough *Edmunds*
analysis, I do not view the notion that the Pennsylvania
Constitution requires more than the Fourth Amendment in
this area as "settled" or "established." We have holdings,
without explanation, invoking cases which rely upon, and
misapprehend, the Fourth Amendment. As I said in *Perry,*

"Pennsylvania constitutional jurisprudence should be made of sterner stuff." *Id.* at 714.

The *McCree* OAJC could safely ignore *Perry* because no majority expression emerged in that case. But the same is true of *McCree*, with respect to the contours of the Pennsylvania automobile exception. Because no majority expression emerged from *McCree* on this point, that OAJC is certainly not support for "establishing" some distinct state constitutional view of the Pennsylvania automobile exception.

In holding that police acted unlawfully in conducting the automobile search in the case *sub judice*, the Majority focuses exclusively upon the police danger exception which the *Perry* OAJC invoked to authorize the search in that case. It is notable, however, and wise, that today's Majority does not purport to approve the legislative-type contours of the police danger exception as expressed in the *Perry* OAJC. As I noted in my *Perry* concurrence, the *Perry* OAJC "extrapolate[d] from *White* a quasi-legislative construct governing automobile searches that sets forth various multi-part tests depending upon the type of exigency that is perceived." *Perry,* 798 A.2d at 708 (Castille, J., concurring). The language from *White* so relied upon, I noted, was "both *dicta* and constitutionally suspect." *Id.* In a footnote, the *White* Court described the police safety exigency in the following hypothetical, but modest, terms: "where the police must search in order to avoid danger to themselves or others, as might occur in the case where police had reason to believe that explosives were present in the vehicle." *White,* 669 A.2d at 902 n. 5. The *Perry* OAJC, however, would have modified the rule, as it labeled the police danger exception a "limited" one, and then stressed that it was only "the unique facts of the case" which would justify its application in *Perry. Perry,* 798 A.2d at 702, 703 (OAJC). The OAJC characterized *White* as "teach[ing]" that the police danger exception was confined to "**extreme** situation[s]" only, where "there is a **great potential for deadly harm**," and justified only a "**limited**" search of the vehicle to ensure police safety. *Id.* at 703 (emphasis added). The *Perry* OAJC would have added the further restriction that, for the

exception to apply, police cannot have "**create[d]**" the situation. *Id.* (emphasis added).

Today's Majority sensibly declines to follow a legislative-type approach to constitutional explication. The contours of a police danger "exception" obviously have to arise from actual cases. The police danger exigency (to the extent one is needed with an automobile search) must allow sufficient flexibility to forward the sole constitutional value at issue, which is that police act reasonably and not arbitrarily. Police obviously must be able to negate danger to themselves and the public even if the danger is short of deadly. Moreover, there need not be a "great" potential of deadly danger, but a reasonable potential, or a colorable potential. Also, we should not adopt a rule under which police must suffer the deadly consequences if their actions somehow "created" the exigency.

Although today's Majority wisely avoids legislating an *ad hoc* police danger exception, I cannot agree with its exclusive focus upon that exception under the facts *sub judice*. In its transition after explaining why it finds no **police** danger in this case, the Majority refers to its conclusion as being "that there were no exigent circumstances here." Majority Op. at 334, 935 A.2d at 1283. But that conclusion is overstated since the Majority does not discuss other exigencies, despite recognizing that police danger is but one type of exigency. I read the Majority Opinion's disconnect in this regard as resulting from the fact that the Commonwealth confines itself to arguing the "police danger" exigency.

In my view, decisions from this Court such as *Commonwealth v. Baker*, 518 Pa. 145, 541 A.2d 1381, 1383 (1988) (unanimous decision), *Commonwealth v. Luv*, 557 Pa. 570, 735 A.2d 87 (1999), *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988 (1991), and even *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995) would require affirmance here. I carefully summarized this controlling authority in my *Perry* concurrence, as follows:

This Court has approved warrantless vehicle searches so long as: (1) police had probable cause, and (2) the probable

cause arose unexpectedly, *i.e.*, in circumstances that prevented police from securing a warrant before probable cause to search the vehicle arose. . . . The actual holding in *White* obviously fits this construct—as do numerous cases decided before or contemporaneously with *White.*

For example, in *Baker,* the police received a tip from a reliable informant that the defendant had waved a gun at an unknown individual in an alley. The informant stated that the defendant was driving an old, dilapidated red convertible with the top down. Police soon located the car with the defendant in it and set up surveillance. After approximately twenty to thirty minutes, the police approached, the defendant exited the car and, subsequently, the police searched the vehicle. In a unanimous opinion, this Court upheld the warrantless vehicle search, reasoning as follows:

> [C]ertain exigencies may render the obtaining of a warrant not reasonably practicable under the circumstances of a given case, and, when that occurs, vehicle searches conducted without warrants have been deemed proper where probable cause was present. . . . This is not a case where police knew hours in advance that a particular vehicle carrying evidence of crime would be parked in a particular locale, such that it would have been reasonably practicable to obtain a search warrant before encountering the vehicle to be searched. Rather the instant search was conducted when police stopped a moving vehicle just thirty minutes after a reported crime. **Inasmuch as the requirement of probable cause was satisfied, the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search proper.**

*Commonwealth v. Baker,* 518 Pa. 145, 541 A.2d 1381, 1383 (1988) (emphasis supplied).

*Baker* was recently cited approvingly in *Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87, 93 (1999) (applying *Baker's* two-fold "determining factors" of "the existence of probable cause and the presence of exigent circumstances" and noting that the exigency in *Baker* involved fact that "police did not know well in advance where the criminal evidence would

be located and could not have reasonably obtained a search warrant"). In *Luv*, this Court found that exigent circumstances existed because, *inter alia*, "[t]here was no time to secure a . . . warrant" once probable cause unexpectedly arose to search his car. *Id.* at 94.

Moreover, *Baker's* approach has been embraced in numerous other cases decided by this Court. In those cases, whether the police had previous information that a particular vehicle would be involved in the commission of a crime has been the decisive factor in determining whether exigent circumstances justified a warrantless automobile search. *See Commonwealth v. Labron*, 543 Pa. 86, 669 A.2d 917 (1995) (*Labron I* ) (no exigent circumstances where, prior to arranging surveillance of defendant, officer had specific information that defendant used his Lincoln automobile to transport drugs); *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988 (1991) (exigent circumstances exist where police did not have advance notice that defendant and her husband would be traveling in York County in particular automobile); *Commonwealth v. Ionata*, 518 Pa. 472, 544 A.2d 917 (1988) (plurality) (no exigent circumstances where police had four hours' advance notice that defendant would be transporting drugs in particular automobile and had obtained search warrant for defendant's person and premises).

*Perry*, 798 A.2d at 717–18 (Castille, J., concurring) (footnote omitted).

The *White dicta* did not purport to overrule the *Baker* line of cases, a line which includes cases decided after *White*; and the *Perry* OAJC's misapplication of the *Baker* line (by engrafting the *White dicta* onto *Baker* ), as a single-Justice expression, obviously could not diminish the precedential value of this series of majority expressions. The warrantless police search in this case was lawful under the *Baker* line and we should not give a contrary impression by overstating our holding.[3] Thus, I concur in the Court's mandate here for the same reason I concurred in *Perry:* the *Baker* line commands

3. The fact that the Commonwealth fails to argue the *Baker* line does not preclude us from realizing the propriety of the police conduct under

it. Appellee here took possession of the contraband within thirty minutes after police were notified by the shipping company manager that he suspected that the shipment appellee had attempted to retrieve contained marijuana. Until appellee actually returned for the contraband, police could not even be sure he would do so. In these exigent circumstances, it was not reasonably practicable for police to obtain a warrant in advance of the vehicle stop. That is enough to decide this case.

Finally, although I would not reach the second issue concerning the independent validity of the search warrant, I write to register a concern with the Majority's discussion of this Court's canine sniff cases, as that is another problematic area in this Court's search and seizure jurisprudence in need of reconsideration. Accurately citing *Commonwealth v. Rogers*, 578 Pa. 127, 849 A.2d 1185 (2004), the Majority notes that this Court's existing jurisprudence takes a categorical approach to canine sniffs: probable cause is required to conduct a canine sniff of a person (a bizarre notion, given both the limited intrusion and the fact that there would be no reason to conduct such a sniff if police already have probable cause); but only reasonable suspicion is required to conduct a sniff of the exterior of a vehicle. Majority Op. at 336, 935 A.2d at 1285. I filed a Concurring Opinion in *Rogers*, which was joined by Messrs. Justice Eakin and Baer, questioning this irrational, categorical approach. Notably, the Majority Opinion in *Rogers* did not dispute that the existing approach warranted revisiting in an appropriate case. *Rogers*, 849 A.2d at 1191 n. 13.

I concur in the result.

Justice SAYLOR, concurring.

Subject to the understanding that the majority addresses itself only to a subset of the circumstances that can reasonably

another settled line of authority. The suppression court denied relief and we must affirm that determination if it is correct for any reason, even if the reason differs from that accepted by the court below. *See Moorhead v. Crozer Chester Med. Ctr.*, 564 Pa. 156, 765 A.2d 786, 787 n. 2 (2001) (citing *Pa. Game Comm'n v. State Civil Serv. Comm'n (Toth)*, 561 Pa. 19, 747 A.2d 887, 888 n. 1 (2000)).

be deemed "exigent" for purposes of the automobile exception to the warrant requirement as it pertains in Pennsylvania, I join the majority opinion. I obviously share Mr. Justice Castille's view that the exception applies more broadly, as reflected in my decision to join the lead opinion in *Commonwealth v. McCree,* 592 Pa. 238, 924 A.2d 621 (2007) (plurality). *See also Commonwealth v. Perry,* 568 Pa. 499, 536–38, 798 A.2d 697, 719–20 (2002) (Saylor, J., concurring). I believe that the solution advanced in *McCree,* which favors the adoption of the federal automobile exception subject to a warrant-when-practicable requirement, represents an appropriate stance and an essential resolution of the longstanding disharmony regarding fundamental principles governing police conduct in this line of cases.

Finally, I see no further need to consider whether the search in this case falls within the broader scope of the exigent circumstances exception, since I agree with the majority that the affidavit of probable cause contains sufficient independent information to support the issuance of the search warrant.

Justice EAKIN joins this concurring opinion.