J-A04040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ELIZABETH ALLISON DINON, | |
| Appellant | No. 1748 EDA 2016 |

Appeal from the Judgment of Sentence May 19, 2016
in the Court of Common Pleas of Chester County
Criminal Division at No.: CP-15-CR-0003247-2015

BEFORE: SHOGAN, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED MAY 18, 2017**

Appellant, Elizabeth Allison Dinon, appeals from the judgment of sentence imposed following her bench trial conviction of driving under the influence of alcohol and controlled substances (cocaine and marijuana), and related offenses. Specifically, she challenges the denial of her motion to suppress. Appellant argues that the Pennsylvania state troopers lacked reasonable suspicion to stop her while she was driving on the night in question. She asserts a violation of her constitutional rights. We conclude that the trial court's finding, in the totality of the circumstances, that the state troopers had reasonable suspicion to stop Appellant, is supported by the record. Accordingly, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

We derive the facts of the case from the trial court's footnote memorandum accompanying its denial of Appellant's motion to suppress, and our independent review of the certified record. (**See** Order, 1/22/16; N.T. Suppression Hearing, 1/11/16; N.T. Trial, 3/11/16).[1]

On July 7, 2015, at about 1:15 a.m., Pennsylvania State Troopers Stefano Gallina and Erick Baker began to follow a Buick LeSabre driven by Appellant on State Route 896 in the area of New Garden Township in Chester County. They continued to follow her when she turned westbound onto Oxford Road.

Appellant's car failed to stay in its lane of travel. The troopers observed the car "touching and/or crossing the double yellow lines." (Order, at 1 n.1). Trooper Baker testified that he observed her vehicle braking for no apparent reason, abruptly fluctuating in speed, and negotiating turns using an unusually wide radius. (**See id.**; **see also** N.T. Suppression Hearing, at 10; **compare** N.T. Trial, at 43-44). The trial court concluded the vehicle was "weaving." (N.T. Trial, at 98).

The troopers started the dashboard camera, or motor vehicle recorder (MVR). The parties agree that the entire length of the recording at issue is less than two minutes. (**See** N.T. Suppression, at 9).

---

[1] Trooper Baker testified at the suppression hearing. Both troopers testified at the trial.

After following Appellant briefly in this way, the troopers activated their overhead lights. Appellant pulled over. They testified they detected an odor of alcoholic beverage. Appellant had glassy, bloodshot eyes. Her pupils were dilated. (**See** N.T. Trial, at 45). Appellant consented to a blood draw. The parties stipulated that Appellant had a B.A.C. (blood alcohol content) of .098%. She also had cocaine and marijuana in her system. (**See id.** at 65-66).

The trial court convicted Appellant of driving under the influence of a controlled substance as follows: 75 Pa.C.S.A. § 3802(a)(1) (general impairment); § 3802(a)(2) (B.A.C. between .08% and .10%); § 3802(d)(1)(i) (Schedule I controlled substance) [cocaine]; § 3802(d)(1)(ii) (Schedule II controlled substance) [marijuana]; § 3802(d)(1)(iii) (metabolite of controlled substance); § 3802(d)(2) (combination of drugs); § 3802(d)(3) (combination of drugs and alcohol).

The trial court acquitted Appellant of violation of 75 Pa.C.S.A. § 3309, driving on roadways laned for traffic; § 3714, careless driving; § 3809, restrictions on alcoholic beverages (prohibiting possession or consumption of open alcoholic beverage in motor vehicle); and § 4305, displaying vehicular hazard warning signals (not turning on flashing lights when stopped by the state troopers). On May 19, 2016, the court sentenced Appellant to a term of not less than seventy-two hours nor more than six months of incarceration.

This timely appeal followed.[2]

Appellant presents one question for our review:

> Whether the investigative stop of [Appellant's] vechile [sic] was lawful under the United States and Pennsylvania Constitutions?

(Appellant's Brief, at 4) (unnecessary capitalization omitted).

Appellant maintains that the state troopers "violated [her] constitutional right against unlawful search and seizures" when they "conducted an unlawful stop of her vehicle." (*Id.* at 13). She posits that there was "insufficient evidence of reasonable suspicion" to justify the troopers' "intrusion on her vehicle." (*Id.* at 17; *see also id.* at 13 n.3). Therefore, she asserts, this Court should reverse the trial court's denial of suppression, and reverse the trial court's judgment. (*See id.* at 17, 18). We disagree.

Preliminarily, we observe that Appellant frames her argument as a challenge to the sufficiency of the evidence. (*See id.* at 17). Our standard of review for a challenge to sufficiency is well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence

---

[2] Appellant filed a concise statement of errors on June 23, 2016. The trial court filed an opinion on June 27, 2016, referencing its order and footnote memorandum of January 22, 2016. *See* Pa.R.A.P. 1925.

and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Harden***, 103 A.3d 107, 111 (Pa. Super. 2014)

(citations omitted).

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

- 5 -

***Commonwealth v. Jones***, 121 A.3d 524, 526–27 (Pa. Super. 2015),

*appeal denied*, 135 A.3d 584 (Pa. 2016) (citation omitted).

Additionally, on differing facts, our Supreme Court has explained the

standard of review and pertinent legal principles for a police stop as follows:

> The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is *de novo.* ***Commonwealth v. Chase***, 599 Pa. 80, 88, 960 A.2d 108, 112 (2008). However, in determining whether the suppression court properly denied a suppression motion, we consider whether the record supports the court's factual findings. If so, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. ***Commonwealth v. Hernandez***, 594 Pa. 319, 328, 935 A.2d 1275, 1280 (2007).

> Pursuant to 75 Pa.C.S.A. § 6308(b),

>> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

> 75 Pa.C.S.A. § 6308(b).

>                    *    *    *

> Section 6308(b) allows a police officer to conduct a vehicle stop if he has reasonable suspicion to believe that a violation of the Motor Vehicle Code is occurring or has occurred. We have defined reasonable suspicion as follows:

- 6 -

Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, **a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot.** [*Commonwealth v.*] *Melendez*, [544 Pa. 323, 676 A.2d 226], at 228 [ (1996) ] (citing *Terry* [*v. Ohio*, 392 U.S. 1], at 21 [88 S. Ct. 1868, 20 L.Ed.2d 889 (1968)]). In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

Thus, under the present version of Section 6308(b), in order to establish reasonable suspicion, an officer must be able to point to **specific and articulable facts** which led him to reasonably suspect a violation of the Motor Vehicle Code . . . .

The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. *See Chase*, [*supra*] at 120 ("[r]easonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer" ). . . . It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot. As the United States Supreme Court has explained:

[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in

- 7 -

making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. And simple " 'good faith on the part of the arresting officer is not enough.' * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police.["]

*Terry*, [*supra* at 21–22] (citations and footnotes omitted).

[Our Supreme] Court has recognized the concerns expressed by the [United States] Supreme Court in *Terry*, noting, for example, "before the government may single out one automobile to stop, there must be specific facts justifying this intrusion. To hold otherwise would be to give the police absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever." Moreover, as we explained in [*Commonwealth v.*] *Cook* [735 A.2d 673 (Pa. 1999)], to demonstrate reasonable suspicion, an officer "must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience." [*id.*] at 677 (citation omitted). Thus, in order to establish reasonable suspicion, an officer must articulate specific facts **in addition to inferences based on those facts**, to support his belief that criminal activity was afoot.

*Commonwealth v. Holmes*, 14 A.3d 89, 94-97 (Pa. 2011) (footnotes and most case citations omitted) (emphases in original).

Here, on independent review, we conclude that the trial court properly denied the motion to suppress. The court found, considering the totality of the circumstances, (including the MVR), that Trooper Baker had reasonable

suspicion to believe that Appellant was driving under the influence of alcohol. (**See** Order, n.1 at unnumbered page 3).

His belief was based on his observation of her vehicle failing to stay in its lane of travel, touching or crossing the double yellow lines in the middle of the road, and braking erratically. (**See** N.T. Suppression, at 10). Based on his training and experience, which included forty personal DUI stops and another forty assists, Trooper Baker drew the inference that there might be criminal activity afoot. (**See id.** at 5-6).[3]

Therefore, in his testimony, Trooper Baker pointed to "specific and articulable facts" which led him to suspect criminal activity, namely driving under the influence. **Holmes, supra** at 95; **see also Terry**, **supra** at 21. The trial court properly denied the motion to suppress.

Appellant insists that "the MVR provides irrefutable evidence that [she] did not exhibit any cues of criminal activity[.]" (Appellant's Brief, at 13; **see also id.** at 16-17). We disagree.

Appellant's reliance on the video is misplaced. She notes that the suppression court characterized the facts of the case as "borderline" (which, in any event, she disputes). Quoting **Commonwealth v. Gleason**, 785 A.2d 983, 987 (Pa. 2001), and **Commonwealth v. Swanger**, 307 A.2d

---

[3] The trooper also noted that between the hours of ten at night and two in the morning, there are higher rates of impaired drivers on the road. (**See** N.T. Suppression, at 38).

875, 879 (Pa. 1973), Appellant maintains that a borderline case is inadequate to meet the Commonwealth's burden of proof. (***See id.*** at 17).

Appellant's argument overlooks the fact that both ***Gleason*** and ***Swanger*** were decided under the previously applicable probable cause standard.[4] The probable cause standard has been replaced by the less stringent reasonable suspicion standard. ***See Holmes***, ***supra*** at 94 n.12, n.16 (Pa. 2011) (recognizing that probable cause standard for investigatory stop has been superseded by statute). Appellant acknowledges that the reasonable suspicion standard controls, (***see*** Appellant's Brief, at 14), indeed, that reasonable suspicion is the "only . . . issue" raised in this appeal. (***Id.*** at 13 n.3).[5] Appellant also explicitly disclaims any challenge to the credibility determinations of the trial court. (***See id.*** at 14). Appellant's claim does not merit relief.

---

[4] Appellant also relies on ***Commonwealth v. Baumgardner***, 796 A.2d 965 (Pa. 2002). (***See*** Appellant's Brief, at 15). ***Baumgardner***, a *per curiam* reversal, explicitly relies on ***Gleason***. Accordingly, ***Baumgardner*** is no longer reliable precedent either.

[5] However, Appellant mischaracterizes the trial court's holding by claiming it found that there was "insufficient cause" to stop her. (Appellant's Brief, at 13 n.3). The trial court found that there was **reasonable suspicion** to stop her, (***see*** Order, n.1 at unnumbered page 3), but "if **probable cause** was required," Trooper Baker lacked sufficient information. (***Id.*** at unnumbered page 4) (emphasis added). Because the trial court's contingent finding is beyond the scope of this appeal, we need not review it on the merits, and we decline to do so.

It was the role of the suppression court sitting as fact finder to review the evidence, to pass on the credibility of witnesses and the weight of the evidence produced, and to believe all, part or none of the evidence. **See Harden**, **supra** at 111. If the record supports the court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. **See Holmes**, **supra** at 96. It is not the role of this Court to re-weigh the evidence, and we decline the invitation to do so.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, and giving the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence, we conclude that there was sufficient evidence, borderline or otherwise, to support the suppression court's finding of reasonable suspicion and denial of suppression. **See id.**

The troopers could have followed Appellant for a longer period of time, but decided not to for the safety of all concerned, including, presumably, Appellant as well as oncoming traffic. (**See** N.T. Suppression, at 10) ("We decided to stop the vehicle to avoid anything that may come.").

In any event, disputing the number of times on the MVR that Appellant intruded on the double yellow line, or not, and how far, misapprehends the purpose and standard of our review. Even a combination of innocent facts,

when taken together, may warrant further investigation by the police officer. *See Holmes*, *supra* at 96.

Furthermore, on independent review, including the MVR, we conclude that the suppression court's factual findings are supported by the record.[6] We are bound by those findings and may reverse only if the court's legal conclusions are erroneous. We conclude that the suppression court properly applied the law to the facts. It was not necessary for the state troopers to prolong the surveillance in order to rack up a higher number of line crossings or other driving violations to establish reasonable suspicion. As noted by the trial court, "[b]etter safe than sorry." (N.T. Suppression, at 49).

Judgment of sentence affirmed.

Judge Solano joins the Memorandum.

Judge Shogan concurs in the result.

---

[6] Additionally, it bears noting that the suppression court reviewed the entire body of evidence in the record, not just the MVR. There are inherent limitations, not the least mechanical, in what a dashboard camera can capture, especially at night. *See* "Justice Visualized: Courts and the Body Camera Revolution," 50 U.C. Davis L.R. 897, 936 (observing that "dash camera videos yield only partial snapshots, often from a distant angle that misses important details").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/18/2017</u>