# Commonwealth v. Ortiz-Claudio

C.P. of Bucks County, no. 1392-2008.

*Daniel Sweeney, chief deputy district attorney,* for Commonwealth.

*Nicholas J. Williamson, chief deputy public defender,* for defendant.

RUFE *J.,* December 16, 2008—Defendant, Giovanni Ortiz-Claudio, has appealed our decision of August 8, 2008, wherein we found defendant guilty of Counts 1-5, of the seven charges brought before the court.[1] We found both mandatory sentences appropriate, and as they rose out of a single transaction that they run concurrently, not consecutively. We imposed the four-year mandatory minimum based on the amount of the drugs and the five-

---

1. Count 1—firearms not to be carried without a license 18 Pa.C.S. §6106(a)1; Count 2—manufacture, delivery, or possession with intent to manufacture or deliver 35 P.S.780-113(a)30; Count 3—intentionally possessing a controlled substance by a person not registered 35 P.S.780-113(a)16; Count 4—use of, or possession with intent to use, drug paraphernalia 35 P.S. 780-113(a)32; Count 5—resisting arrest or other law enforcement 18 Pa.C.S. §5104.

year mandatory based on the possession of a firearm in conjunction with the narcotics.[2] Defendant's appeal is largely based from decisions of this court following the suppression hearing conducted on May 5, 2008. We offer this opinion in support of our decision.

The facts of this case are as follows. Sergeant Joseph Moors, in command of the midnight shift with the Bristol Borough Police Department, and an officer of 16 years of experience, received an anonymous call on the police radio advising of an armed subject intending to commit a robbery in the 900 block of Spring Street in the Borough of Bristol, Bucks County, Pennsylvania. Spring Street and the surrounding neighborhood is known to Sergeant Moors for its high activity in narcotics, domestic disputes, loud parties and fights. Upon receiving the information Sergeant Moors proceeded to the said block. Finding no activity on that street he proceeded to the rear of the apartment buildings which line that street to the dimly lit parking lot associated with those apartments. Sergeant Moors turned on a spotlight on his patrol vehicle to beam it on cars parked against the back wall of the buildings. He observed a black Dodge Durango occupied by three people. As he shined his light on the vehicle two of the people exited from the passenger side of the car and one from the driver's side. All three attempted to walk away from the Sergeant. Defendant, who exited from the driver's side, proceeded to the back of the vehicle, toward the building wall. At all times defendant kept his back to

---

2. 18 Pa.C.S. §7508(a)(1)(iii); 42 Pa.C.S. §9712.

Sergeant Moors. Defendant was continuously making furtive movements, which appeared to the officer that he was putting into or removing from his belt an object. Sergeant Moors instructed the three individuals to stop and turn around and they did not respond to his command. Sergeant Moors drew his weapon and pointed it at the three, primarily at defendant because of his conduct. Defendant walked an additional seven to 10 feet, in a sideways pattern, always keeping his back to Sergeant Moors, while he was being commanded to stop and put his hands up.

Officer Palmer, also of Bristol Borough Police Department, testified that he had arrived at the scene before Sergeant Moors, and had driven past the parking lot. Therefore, he was in position to respond quickly, as backup, when he received Sergeant Moors' radio transmission about observing the three individuals in the car and exiting his police vehicle. Officer Palmer observed defendant shielding his body and failing to comply with Sergeant Moors' commands. He joined in shouting the commands for the individuals to stop moving and raise their hands. The individuals ultimately complied and placed their hands on the wall as ordered. Officer Palmer approached to pat down the individuals. During the pat down a hard object around defendant's waist was found in his pants.

Given the earlier radio transmission, which Officer Palmer also received, he suspected the hard object to be a weapon. When removed from defendant's pants, the hard object was a baggie with hard objects of other baggies containing a rocklike substance. Officer Palmer placed defendant under arrest and handcuffed him.

During a moment when the other persons under investigative detention distracted the police officers, defendant fled, at which time an object fell from his person. It was retrieved and found to be another glassine bag.

After the three individuals were taken into custody, Sergeant Moors examined the Dodge Durango. With the use of a flashlight he observed a large handgun on the floor of the vehicle, with the trigger cocked. Sergeant Moors obtained entry and recovered the "armed and ready-to-fire handgun." A search warrant was received for the remaining search of the vehicle.

Both Officer Palmer and Sergeant Moors testified the situation was dangerous, tension filled, and they feared gunfire would ensue, jeopardizing their safety and that of persons in the apartment buildings. N.T. 5/5/2008, pp. 90-97.

The standard of review by the Pennsylvania Superior Court is whether the record supports the factual findings of a trial court and whether the legal conclusions drawn therefrom are free from error. *Commonwealth v. McClease,* 750 A.2d 320, 323 (Pa. Super. 2000) citing *Commonwealth v. Collazo,* 692 A.2d 1116, 1118 (Pa. Super. 1997). In reviewing an order from a suppression court, the Superior Court considers the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. The suppression court's factual findings will be accepted if they are supported by the evidence. *Commonwealth v. Hennigan,* 753 A.2d 245, 254 (Pa. Super. 2000) citing *Commonwealth v. Hoopes,* 722 A.2d 172, 175 (Pa. Super. 1998).

Pursuant to Pa.R.A.P. 1925(b) appellant filed a concise statement of matters complained of on appeal. Appel-

lant's assertions were lengthy and repetitive containing 23 matters complained of on appeal.[3] There is a recent trend in case law in this Commonwealth to establish a balance between excessively, lengthy, repetitive and vague statements on appeal and what is expected of trial courts in responding to such, while not being too broad and sweeping in identifying appeal issues waived solely for those same reasons.

In the instant matter, we have consolidated the 23 matters complained of on appeal into four. We refer to the case of *Jiricko v. Geico Insurance Co.,* 947 A.2d 206, 212 (Pa. Super. 2008) which provides a comprehensive discussion of the recent changes regarding Rule 1925(b). The discussion begins with *Kanter v. Epstein,* 866 A.2d 394 (Pa. Super. 2004), wherein the "trial court was troubled by the number of issues raised and felt that in addition to the Rules of Appellate Procedure, the duty of dealing in good faith with the court had been breached."

Even more recently, in *Eiser v. Brown & Williamson Tobacco Corp.,* 595 Pa. 366, 383, 938 A.2d 417, 427 (2007), the Pennsylvania Supreme Court, for the first time, undertook an analysis of *Kanter,* as well as the deviations in recent years, to the 1925(b) process. The Supreme Court cautioned the lower courts against a blanket application of *Kanter,* and instead "encourage[d] the lower courts to recognize that on rare occasions a party may, in good faith, believe that a large number of issues are worthy of pursuing on appeal."

---

3. Paragraphs 21 and 22 refer to an individual not relevant to this matter. We assume that to be an error confined to those paragraphs and one that does not otherwise impact the integrity of this appeal.

Subsequently, in *Jiricko,* the Superior Court reasoned, in a complicated multi-count lawsuit with numerous defendants resulting in many trial court rulings, and, since it appeared that there was no intended bad faith in an effort to circumvent 1925(b), but rather an attempt to insure issues not raised were not waived, the court should not deny appellate review on the number of issues alone. (Citing *Eiser.*)[4]

Given the status of the law, while we are surprised by the excessive number and redundant issues raised in the instant Rule 1925(b) statement, we have assumed it may have been the result of a poorly reasoned appellate strategy as we see no blatant bad faith beyond the 23 repetitive items raised. Therefore, we provide this opinion in support of our decisions. Having stated the above, we will address the appeal by categorizing the 23 items complained of on appeal into four sections as follows: anonymous tip, abandonment, warrantless search of vehicle, firearm without a license.

## ANONYMOUS TIP

The first matter complained of is defendant's assertion that the anonymous tip received, "[F]or an armed subject with a possible robbery about to occur in the area of the 900 block of Spring Street in Bristol Borough," N.T. 5/5/2008, p. 7, was simply not enough information, lacking any additional police work or corroboration, for the

---

4. In *Jiricko,* the court noted that while the five-page statement could certainly be considered lengthy, in that case the issue was the "incoherent, confusing, redundant, defamatory rant" resulting in there being no legitimate appellate issue presented.

officers to act as they did, subjecting defendant to an investigative detention.

An investigatory stop of an automobile is justified only when it is based upon objective facts creating a reasonable suspicion that the vehicle's occupants are, at that time, involved in criminal activity. To meet that standard the officer must point to specific articulable facts which together with rational inferences would warrant the intrusion. To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon information of third parties, including tips from citizens. Reasonable suspicion is dependent on the content and degree of reliability when viewed in a totality of the circumstances. *Commonwealth v. Lohr,* 715 A.2d 459, 461 (Pa. Super. 1998).

Here, a totality of the circumstances evaluation supports the officers' conduct.

"Those circumstances include the report, the anonymous tipster or caller who referred to an armed robbery about to occur. Those circumstances include the officer's experience with the neighborhood, which was an area of high police contact.

"We take into consideration the hour of the day, the time of the day when humankind is largely asleep in that there were no other persons in the area for whom any police contact would be necessary.

"We take into consideration the fact that the report of the complaint was, while not specific as to person, was specific as to crime, and the report of the crime itself justified a heightened sense of suspicion of criminal activity, or if not activity, at least the police officer's

responsibility for their personal safety to take security measures." N.T. 5/5/2008, pp. 99-100.

In *Commonwealth v. Lawson,* 454 Pa. 23, 28, 309 A.2d 391, 394 (1973), the Pennsylvania Supreme Court stated, "All of the detailed facts and circumstances must be considered. The time is important; the street location is important . . . the movements and manners of the parties are important." We note that courts are to give due weight to the specific reasonable inferences a police officer is entitled to draw from the facts in light of his or her experience. *Commonwealth v. Emeigh,* 905 A.2d 995, 998 (Pa. Super. 2006); *Commonwealth v. Cook,* 558 Pa. 50, 57, 735 A.2d 673, 676 (1999). Therefore, even given the source of information to the police was unknown, when we consider the tip along with the other surrounding circumstances; time of day, location, officer experience, we were not convinced by defendant's sweeping assertions that the anonymous tip here was uncorroborated and did not justify an investigatory detention. In light of the facts reflected in the record we find that argument unpersuasive.

## ABANDONMENT

Defendant's next argument on appeal is that evidence seized due to abandonment should be suppressed. Specifically this is referring to the drugs that fell from defendant's person as he was attempting to flee the officers while they tended to the other individuals.

*Commonwealth v. Tillman,* 423 Pa. Super. 343, 345, 621 A.2d 148, 149 (1993) provides, in applying the doctrine of forced abandonment, the reasoning utilized is

that police "forced" an appellee to abandon the cocaine through their illegal seizure of him. We found the abandonment of these drugs was not due to any forced or coercive action on the part of the officers.

Sergeant Moors testified, "Officer Palmer left after handcuffing the defendant seated here today, moved over to her[5] to get her to stop reaching in her pocket to give her a pat down for weapons. It was at that time that defendant turned to his right, as I was the cover officer still covering the situation, turned to his right and started to run. At that precise time is when I saw another large glassine bag fall to the ground and the defendant run to the right behind the cars." The Sergeant stated the bag fell from "the defendant's person/body." N.T. 5/5/2008, p. 30. We found the specific facts of the instant matter revealed no forced abandonment, but rather the occurrence was the result of defendant's attempt at escape. N.T. 5/5/2008, pp. 30, 102. When defendant attempted to flee he had already been handcuffed. Therefore, it was not possible for him to reach into his pockets and throw anything away. We consider this "an accidental loss from his person." N.T. 5/5/2008, p. 100.

## WARRANTLESS SEARCH OF VEHICLE[6]

The third category of matters complained of on appeal relates to the warrantless search of the vehicle which defendant exited.

---

5. Referring to "the subject to the left of Officer Palmer." N.T. 5/5/2008, p. 30.

6. The record reflects the search of the vehicle was not a subject of the original suppression motion, however, defense counsel pursued a line of questioning which in turn permitted the Commonwealth to address the subject as well. N.T. 5/5/2008, p. 27.

The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The issue is whether a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27. *In re O.J.,* 2008 WL 4415653, 2 (Pa. Super. 2008).

In *Commonwealth v. Hernandez,* 594 Pa. 319, 328-29, 935 A.2d 1275, 1280 (2007), the Pennsylvania Supreme Court set forth the law regarding warrantless automobile searches as follows:

"Under the federal Constitution, law enforcement personnel may conduct a warrantless search of an automobile as long as probable cause exists. *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 147-56, 45 S.Ct. 280, 69 L.Ed. 543 [T.D. 3686] (1925). This rule, known as the automobile exception to the warrant requirement, is based on the inherent nature of vehicles—their mobility—and applies even if a vehicle is 'seized and immobilized.' *Commonwealth v. McCree,* 592 Pa. 238, 924 A.2d 621, 629 (2007) (plurality) (citing *Chambers*). In Pennsylvania, however, 'we have not adopted the full federal automobile exception under Article I, Section 8.' *Id.* Warrantless vehicle searches in this Commonwealth must be accompanied not only by probable

cause, but also by exigent circumstances beyond mere mobility; 'one without the other is insufficient.' *Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87, 93 (1999). This dual requirement of probable cause plus exigency is an established part of our state constitutional jurisprudence. *McCree,* 924 A.2d at 629-30. See also, *Commonwealth v. Casanova,* 748 A.2d 207, 211 (Pa. Super. 2000), *appeal denied,* 570 Pa. 682, 808 A.2d 569 (2002); *Commonwealth v. Gelineau,* 696 A.2d 188, 192 n.2 (Pa. Super. 1997), *appeal denied,* 550 Pa. 699, 705 A.2d 1305 (1998); *Commonwealth v. Rosenfelt,* 443 Pa. Super. 616, 662 A.2d 1131, 1146 (1995), *appeal denied,* 544 Pa. 605, 674 A.2d 1070 (1996)."

The *Hernandez* court held that potential danger to police or the public satisfies the exigency requirement for warrantless vehicle searches. *Id.,* 594 Pa. at 329, 935 A.2d at 1281. In *Hernandez,* however, the Supreme Court concluded that the warrantless automobile search in that case was not justified. In so holding, the Supreme Court cautioned that "[t]he fact that potential for danger to police or the public is enough to constitute exigent circumstances does not mean that a mere assertion of danger is sufficient. Rather, police must be able to articulate the danger posed under the specific circumstances of the case." *Id.,* 594 Pa. at 332, 935 A.2d at 1282. The *Hernandez* court held that the Commonwealth had failed to articulate the danger posed under the specific circumstances of that case.

In contrast to *Hernandez,* Sergeant Moors sufficiently articulated the danger here. The transcript from the suppression hearing reveals that Sergeant Moors provided valid evidence in supporting his reasons for the search

of the truck. After the fourth individual was found, hiding in the front seat of another car, Sergeant Moors testified, the officers believed he could be involved in the activity with the other three individuals. N.T. 5/5/2008, p. 28. Then Sergeant Moors approached the Durango and illuminated the interior. It was at that time that he "observed a large handgun on the floor, on the driver's side floor cocked in the ready position to be fired . . . the gun was actually facing out towards the front and I knew that we were going to be calling for the duty tow . . . Officer Lancieri advised me that just prior to him tackling the defendant on the west side of the parking lot, he threw a key into the parking lot . . . that key had opened the door to that vehicle, the Dodge Durango." N.T. 5/5/2008, pp. 33-34. While a search warrant was ultimately obtained for the vehicle, Sergeant Moors testified the gun was seized prior to that point for safety reasons. "I didn't want the duty tow gentleman to come and move the car with the gun being in the cocked position like that. I was afraid it could go off and there could be an accidental shooting." N.T. 5/5/2008, pp. 35-36. Based on the facts elicited at the suppression hearing we concluded that the search of the vehicle was in preparation for an inventory search. Furthermore, the object was in plain view and could have been seized by the officers for that reason as well. N.T. 5/5/2008, p. 101. *Commonwealth v. McCree,* 592 Pa. 238, 924 A.2d 621 (2007).

## FIREARMS WITHOUT A LICENSE

The final matter complained of on appeal asserts the Commonwealth failed to present sufficient evidence to allow this court to find defendant guilty of firearms not

to be carried without a license. Unlike the suppression matters previously addressed, this issue was addressed at the waiver trial which began immediately upon conclusion of the suppression hearing. At the waiver trial it was stipulated that when the firearm was seized it contained five rounds of ammunition.

In order to prove possession, the evidence must show that appellant had the power to control such items with the intent to exercise control over them. *Commonwealth v. Fassett,* 260 Pa. Super. 323, 394 A.2d 573 (1978), however, possession may be shown by circumstantial evidence. *Commonwealth v. Ferguson,* 231 Pa. Super. 327, 331 A.2d 856 (1974). In the instant case, the totality of the circumstances shown by the Commonwealth's evidence was sufficient to permit the court to infer possession by defendant. See *Commonwealth. v. Bentley,* 276 Pa. Super. 41, 44, 419 A.2d 85, 87 (1980).

In making our determination we considered the testimony that defendant, who was originally seated in the driver's seat, and the weapon found on the driver's seat floor, was closest to the weapon at all times. We took into consideration the testimony of Ms. Murray, one of the three individuals involved. She testified that she had borrowed the Durango from a friend, the gun was not hers, and she had not seen it at the scene, she had never driven the Durango and defendant was the only one to drive the Durango. She testified further that she always looks around a car before she borrows it for anything that might be in the car. N.T. 5/5/2008, pp. 112-19.

In finding defendant guilty of possessing a firearm without a license we considered the furtiveness of de-

fendant as described by the officers. We acknowledge the inherent danger of violence where drug trafficking is the central activity. It was stipulated on the record that Detective Timothy Carroll of the Bucks County Detectives is an expert in the field of drugs and trafficking, and that he would testify that the drugs possessed by the defendant were possessed with the intent to deliver. N.T. 5/5/2008, p. 110. Defendant was found with over a quarter pound, over 120 grams of cocaine, on his person. N.T. 5/6/2008, p. 21. Therefore we took judicial notice, along with the growing number of courts who have taken judicial notice, of the fact drug dealers are likely to be armed and dangerous. *Commonwealth v. Patterson,* 405 Pa. Super. 17, 22, 591 A.2d. 1075, 1078 (1991).

Defendant's lengthy statement of matters complained of can be concisely stated as believing the initial stop, originating from an anonymous tip, was unjustified, hence everything seized as a result therefrom also fails as the fruit of the poisonous tree. It is the prerogative of the fact-finder to believe all, part, or none, of the evidence presented. *Commonwealth v. Lyons,* 382 Pa. Super. 438, 555 A.2d 920 (1989). As discussed, we found the evidence presented credible and sufficient to establish probable cause and justify Sergeant Moors' investigatory detention, subsequent arrest, and the vehicle search which originated from an anonymous tip. Defendant's assertion that probable cause did not exist for the stop and arrest is without merit.