J-S95026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTOINE POTEAT | |
| Appellant | No. 3305 EDA 2015 |

Appeal from the Judgment of Sentence October 20, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0003752-2014

BEFORE:  STABILE, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                        **FILED MAY 23, 2017**

Antoine Poteat appeals from the October 20, 2015 judgment of sentence entered in the Lehigh County Court of Common Pleas following his bench-trial conviction for two counts of possession with intent to deliver a controlled substance ("PWID") and two counts of possession of a controlled substance.[1]  We affirm.

The trial court summarized the relevant facts as follows:

> On February 20, 2013, at approximately 1:30 PM, while on patrol in full uniform and in an unmarked police vehicle, Trooper Gerald Lydon of the Pennsylvania State Police, Fogelsville Barracks, was traveling westbound on Route I-78 in the area of West Rock Road, Salisbury Township, Lehigh County, Pennsylvania, when he observed a grey Toyota Camry following a tractor trailer with approximately one (1) vehicle length separating it from the tractor trailer.

---

[1] 35 P.S. §§ 780-113(a)(30) and (16), respectively.

The vehicle was traveling at approximately 60 to 65 miles per hour in a posted 55 miles per hour zone. The distance between the vehicles was closer than reasonable and prudent for the existing conditions, based on the speed, the type of roadway, and the fact that the vehicle being followed was a tractor trailer. The recommended safe distance is approximately 6 to 7 seconds. Nevertheless, the grey Toyota Camry was following approximately one-half (1/2) second behind the tractor trailer. In fact, the operator of the grey Toyota Camry, later identified as [Poteat], had to apply the brakes of his vehicle numerous times over the course of the mile to mile and [a] half that Trooper Lydon was following him.

Consequently, Trooper Lydon effectuated a traffic stop in the area of West Lehigh Street, Allentown, utilizing his vehicle's emergency lights and siren. Trooper Lydon approached the passenger side of the vehicle and observed several unopened air fresheners on the passenger seat, as well as a couple of opened air fresheners hanging from the steering column. In addition, he saw fabric softener sheets and an opened bottle of cologne on the passenger seat. Trooper Lydon smelled fresh marijuana emanating from the vehicle. Furthermore, Trooper Lydon viewed (2) cell phones in the vehicle, one (1) of which was a prepaid phone that repeatedly rang over the course of the traffic stop.

Trooper Lydon made verbal contact with the operator of the vehicle and advised him that he was being stopped because he was traveling too closely behind the tractor trailer, in contravention of the Pennsylvania Motor Vehicle Code, 75 P.S. § 3310(a).[3] [Poteat] appeared extremely nervous. Trooper Lydon inquired of the Defendant from where he was coming. [Poteat] indicated that he was coming from Allentown. This response was inconsistent with the direction on which [Poteat] was heading on I-78, as he was traveling *towards* Allentown. In addition, Trooper Lydon noticed a NYC Parking Authority citation in the car dated the day before, February 19, 2013. [Poteat] denied being in New York the day before and advised the trooper that his cousin, Keith, had used the rental vehicle on that date.

³ Specifically, § 3310(a) of the Motor Vehicle Code provides:

(a) General rule. – The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway.

Trooper Lydon requested that [Poteat] produce his driver's license and the registration to the vehicle. At that time, [Poteat] informed the trooper that the vehicle was a rental from Enterprise Rent-A-Car. However, he was unable to locate the rental agreement. Consequently, Trooper Lydon returned to his police vehicle to contact Enterprise Rent-A-Car in order to verify the rental of the subject vehicle. While waiting for Enterprise Rent-A-Car to return his telephone call, the trooper ran a background check on [Poteat] and learned that he had previous arrests for possession of marijuana and possession with intent to deliver marijuana. As a result of the marijuana odor that he detected in the vehicle, as well as the masking agents in the vehicle, Trooper Lydon called for assistance, including a K-9 Unit to perform a drug sniff.

After approximately twenty (20) minutes, Enterprise Rent-A-Car made contact with Trooper Lydon and informed him that [Poteat] did have a valid contract with them. At this time, Trooper Lydon exited his police vehicle and approached [Poteat's] vehicle once again. He requested that [Poteat] exit his vehicle. Then, Trooper Lydon issued [Poteat] a warning, citing him for a motor vehicle violation under the Pennsylvania Motor Vehicle Code, 75 P.S. § 3310(a): Following too closely. [Poteat] was then told by Trooper Lydon that he was free to leave and the documents were returned to [Poteat]. However, Trooper Lydon reinitiated contact with [Poteat] by inquiring about his not being in New York the previous day. Trooper Lydon again advised [Poteat] that he was free to leave, but explained that his vehicle was not. [Poteat] refused to provide consent to search the rental vehicle.

Trooper Chad Labour of the Canine Division arrived on scene and deployed a drug detection canine to conduct an

exterior search of the vehicle. It appeared as if the dog displayed positive alert behavior. Based on the totality of the circumstances, a search warrant for [Poteat's] rental vehicle was applied for by Trooper Lydon. After approximately forty (40) to forty-five (45) minutes from the inception of the vehicle stop, [Poteat] was voluntarily taken from the scene and transported to police headquarters by Trooper Nicholas Goldsmith so that [Poteat] could make arrangements for other transportation. An execution of the Search Warrant yielded 1,004 grams of cocaine and 90 grams of marijuana in the rental vehicle.

Memorandum Opinion, 12/1/15, at 2-5 ("1925(a) Op.") (emphasis in original).

On October 31, 2014, Poteat filed an omnibus pre-trial motion, which included an application to compel discovery and an application to suppress the evidence seized from Poteat's vehicle. On February 12, 2015, the trial court held a hearing on Poteat's motion. Trooper Lydon and Poteat testified at the hearing. On February 18, 2015, the trial court denied Poteat's motion. On May 11, 2015, Poteat filed a motion for reconsideration of the trial court's denial of his motion to suppress, which the trial court denied on May 19, 2015.

On September 21, 2015, following a bench trial, Poteat was convicted of two counts of PWID and two counts of possession of a controlled substance. On October 20, 2015, the trial court sentenced Poteat to an aggregate term of 5 to 10 years' incarceration. On November 2, 2015, Poteat filed a timely notice of appeal.

Poteat raises the following issue on appeal:

> Did the Trial Court err in denying Antoine Poteat's Motion to Suppress the Evidence, filed after Pennsylvania State Police obtained evidence as a result of a search, which violated [Poteat's] rights under the Fourth Amendment to the United States Constitution as well as Article I, Section VIII, of the Pennsylvania Constitution[?] See USCS Const. Amend. 4; Pa. Const. Art. I, § 8.

Poteat's Br. at 4.

In reviewing the denial of a suppression motion, we must determine:

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted).

Poteat argues that he was unlawfully seized for a second time after the conclusion of the traffic stop. Specifically, Poteat submits that "after issuing a ticket and informing [Poteat] that he was free to leave, the [t]rooper unlawfully extended the stop when he, again, seized [Poteat]." Poteat's Br. at 10. Poteat argues that the trial court should have therefore suppressed evidence recovered following the allegedly unlawful seizure. ***Id.*** at 13. The

trial court denied Poteat's motion to suppress, reasoning that Poteat's detention was supported by reasonable suspicion and probable cause that a crime was being committed. 1925(a) Op. at 9.

The law recognizes three levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention; and (3) a custodial detention. *See Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super. 2012). This Court has previously discussed the requirements for police at each level:

> The first of these [interactions] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Id.* (quotation omitted).

"The matter of when a traffic stop has concluded or otherwise given way to a new interaction does not lend itself to a 'bright[-]line' definition." *Commonwealth v. Reppert*, 814 A.2d 1196, 1202 (Pa.Super. 2002).

> In *Commonwealth v. Strickler*, [] 757 A.2d 884 ([Pa.] 2000), our Supreme Court analyzed under what circumstances a police interdiction can devolve into a mere encounter following a traffic stop when police continue to question the person after the reason for the traffic stop has concluded. The Supreme Court in *Strickler* ruled that after police finish processing a traffic infraction, the determination of whether a continuing interdiction

constitutes a mere encounter or a constitutional seizure centers upon whether an individual would objectively believe that he was free to end the encounter and refuse a request to answer questions.

Our Supreme Court adopted a totality-of-the-circumstances approach. It delineated a non-exclusive list of factors to be used in making this assessment. Those factors include 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location and time of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) "the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, . . . thus suggesting to a citizen that his movements may remain subject to police restraint," *id.* at 898; and 9) whether there was an express admonition to the effect that the citizen-subject is free to depart, which "is a potent, objective factor." *Id.* at 899. Our Supreme Court also observed that when an individual has been subjected to a valid detention but police continue to engage the person in conversation, the person is less likely to reasonably believe that he is actually free to leave the scene.

*Commonwealth v. Kemp*, 961 A.2d 1247, 1253 (Pa.Super. 2008) (ellipses in original).

Furthermore, our Supreme Court has held that reasonable suspicion is required prior to a canine sniff of the exterior of a vehicle. *Commonwealth v. Rogers*, 849 A.2d 1185, 1191 (Pa. 2004). "[T]he law is clear that once a canine sniff of a vehicle's exterior triggers a positive indication, reasonable suspicion of contraband in the vehicle ripens into probable cause." *Commonwealth v. Hernandez*, 935 A.2d 1275, 1285 (Pa. 2007).

Following the traffic stop, Trooper Lydon returned Poteat's documents to him, issued him a warning, and told him that he was free to leave. Poteat turned around and began to walk to his car. N.T., 2/12/15, at 32. Trooper Lydon then re-engaged Poteat in conversation seamlessly by immediately "inquiring about his not being in New York the previous day." 1925(a) Op. at 4. Because Trooper Lydon immediately continued to engage Poteat in conversation, a reasonable person in Poteat's position would not reasonably believe that he was free to leave the scene.[2] *See Kemp*, 961 A.2d at 1253. In addition, when Trooper Lydon re-initiated contact with Poteat, Poteat was still outside his vehicle. *See id.* at 1254 ("[W]hen a person is standing outside rather than inside his vehicle, he is less likely to believe that he can actually leave the area by entering the car and driving away."). Moreover, because Trooper Lydon had seen indicia of drug-related activity, it would have been unlikely that he would have permitted Poteat to leave in his car. *See id.* (noting that "Trooper DeLuca had observed major indicia of drug-related activity during the course of the traffic stop. It is unlikely that after returning the documents and telling Appellant to have a nice day, Trooper DeLuca would have permitted Appellant to enter the car and drive away."). Trooper Lydon subsequently told Poteat that he was free to leave, but his

_____

[2] Although not dispositive, Poteat testified at the suppression hearing that he did not believe he was free to leave when Trooper Lydon re-engaged him in conversation after Poteat had turned around and started walking towards his vehicle. N.T., 2/12/15, at 44.

vehicle was not. 1925(a) Op. at 4-5. In light of the totality of the circumstances, we conclude that Poteat was not free to leave despite Trooper Lydon's statement to the contrary. Instead, Poteat was subjected to an investigatory detention.

We must now determine whether the investigative detention was constitutionally proper.

> The Supreme Court in [**Commonwealth v. Freeman**, 757 A.2d 903 (Pa. 2000)] quite plainly stated that in order to justify a continued detention beyond the initial valid detention, which was the traffic stop, police needed reasonable suspicion that the defendant was engaged in criminal activity independent of that initial lawful detention. In other words, once police process the traffic violation, they cannot rely upon the traffic violation to prolong the detention; they need other information supporting reasonable suspicion.

**Kemp**, 961 A.2d at 1258.

In **Kemp**, an *en banc* panel of this Court held that facts gathered during a valid traffic stop can be used to justify a subsequent investigatory detention occurring after a police officer informs a defendant that he is free to leave. **Id.** at 1260.

In **Kemp**, this Court concluded that the police officer in question had sufficient facts at his disposal to establish reasonable suspicion to suspect that the appellant and his passenger were in possession of a controlled substance. **Id.** at 1254-55. These facts included: 1) the presence of masking agents (including dryer sheets and different types of air fresheners); 2) third-party vehicle ownership; and 3) an odor of fresh

marijuana indicating that a significant amount of that substance was present.  *Id.* at 1255.  "Furthermore, [the passenger] displayed extreme nervousness, [the] [a]ppellant did not provide the correct name of the car's owner, and they were traveling from a source city."  *Id.*

The facts of the instant matter are similar to those in *Kemp*.  Trooper Lydon testified that when he approached the vehicle, he observed several open air fresheners hanging from the steering column, unopened air fresheners on either the driver's or passenger's seat, and a bottle of perfume/cologne and an open box of fabric softener sheets on the passenger's seat.  N.T., 2/12/15, at 14.  Poteat's vehicle was a rental.  *Id.* at 16.  Trooper Lydon testified that he could smell the odor of fresh marijuana coming from the vehicle and that Poteat appeared "overly nervous."  *Id.* at 15.  Although Poteat was the only occupant of the car, Trooper Lydon noticed two cell phones, one of which appeared to be a prepaid cell phone.  *Id.*  Furthermore, Trooper Lydon observed a parking ticket from New York City in Poteat's vehicle.[3]  *Id.* at 33.  In light of these facts, we conclude that Trooper Lydon's investigative detention of Poteat was supported by a reasonable suspicion that Poteat was engaged in criminal activity.

_____

[3] In *Kemp*, the police officer testified that one indicia of drug courier activity was "whether the car is coming from a source city, such as New York, Allentown, Lancaster, Reading, Philadelphia, Pittsburgh, or Harrisburg." 961 A.2d at 1251.

- 10 -

Finally, the police applied for and received a search warrant for Poteat's vehicle. Because the canine unit dispatched to the scene displayed positive-alert behavior for the presence of drugs in the vehicle, 1925(a) Op. at 5, the search warrant was properly supported by probable cause.

Accordingly, the trial court did not err in denying Poteat's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017